# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311 Hon. Sean F. Cox |

| | |
|---|---|
| IN RE: WIRE HARNESS SYSTEMS | Case No. 2:12-cv-00103 |
| IN RE: INSTRUMENT PANEL CLUSTERS | Case No. 2:12-cv-00203 |
| IN RE: FUEL SENDERS | Case No. 2:12-cv-00303 |
| IN RE: HEATER CONTROL PANELS | Case No. 2:12-cv-00403 |
| IN RE: BEARINGS | Case No. 2:12-cv-00503 |
| IN RE: OCCUPANT SAFETY SYSTEMS | Case No. 2:12-cv-00603 |
| IN RE: ALTERNATORS | Case No. 2:13-cv-00703 |
| IN RE: ANTI-VIBRATIONAL RUBBER PARTS | Case No. 2:13-cv-00803 |
| IN RE: WINDSHIELD WIPER SYSTEMS | Case No. 2:13-cv-00903 |
| IN RE: RADIATORS | Case No. 2:13-cv-01003 |
| IN RE: STARTERS | Case No. 2:13-cv-01103 |
| IN RE: AUTOMOTIVE LAMPS | Case No. 2:13-cv-01203 |
| IN RE: SWITCHES | Case No. 2:13-cv-01303 |
| IN RE: IGNITION COILS | Case No. 2:13-cv-01403 |
| IN RE: STEERING ANGLE SENSORS | Case No. 2:13-cv-01603 |
| IN RE: HID BALLASTS | Case No. 2:13-cv-01703 |
| IN RE: INVERTERS | Case No. 2:13-cv-01803 |
| IN RE: ELECTRONIC POWERED STEERING ASSEMBLIES | Case No. 2:13-cv-01903 |
| IN RE: AIR FLOW METERS | Case No. 2:13-cv-02003 |
| IN RE: FAN MOTORS | Case No. 2:13-cv-02103 |
| IN RE: FUEL INJECTION SYSTEMS | Case No. 2:13-cv-02203 |
| IN RE: POWER WINDOW MOTORS | Case No. 2:13-cv-02303 |
| IN RE: AUTOMATIC TRANSMISSION FLUID WARMERS | Case No. 2:13-cv-02403 |
| IN RE: VALVE TIMING CONTROL DEVICES | Case No. 2:13-cv-02503 |
| IN RE: ELECTRONIC THROTTLE BODIES | Case No. 2:13-cv-02603 |
| IN RE: AIR CONDITIONING SYSTEMS | Case No. 2:13-cv-02703 |
| IN RE: WINDSHIELD WASHER SYSTEMS | Case No. 2:13-cv-02803 |

- cont. -

| | |
|---|---|
| IN RE: CONSTANT VELOCITY JOINT BOOT PRODUCTS | Case No. 2:14-cv-02903 |
| IN RE: SPARK PLUGS | Case No. 2:15-cv-03003 |
| IN RE: AUTOMOTIVE HOSES | Case No. 2:15-cv-03203 |
| IN RE: SHOCK ABSORBERS | Case No. 2:15-cv-03303 |
| IN RE: BODY SEALING PRODUCTS | Case No. 2:16-cv-03403 |
| IN RE: INTERIOR TRIM PRODUCTS | Case No. 2:16-cv-03503 |
| IN RE: AUTOMOTIVE BRAKE HOSES | Case No. 2:16-cv-03603 |
| IN RE: EXHAUST SYSTEMS | Case No. 2:16-cv-03703 |
| IN RE: CERAMIC SUBSTRATES | Case No. 2:16-cv-03803 |
| IN RE: POWER WINDOW SWITCHES | Case No. 2:16-cv-03903 |
| IN RE: AUTOMOTIVE STEEL TUBES | Case No. 2:16-cv-04003 |
| IN RE: ACCESS MECHANISMS | Case No. 2:16-cv-04103 |
| IN RE: SIDE DOOR LATCHES | Case No. 2:17-cv-04303 |
| IN RE: ELECTRONIC BRAKING SYSTEMS | Case No. 2:21-cv-04403 |
| IN RE: HYDRAULIC BRAKING SYSTEMS | Case No. 2:21-cv-04503 |

THIS DOCUMENT RELATES TO:
End-Payor Actions

## OVERLAND WEST, INC. AND BOOTON, INC'S OBJECTION TO CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES IN CONNECTION WITH THE ROUND 1–5 SETTLEMENTS[1]

---

[1] Objectors file in every class docket where Class Counsel has filed their fee motion, with the sole exception of *In re: Motor Generators*, 2:13-cv-01503.

## STATEMENT OF ISSUES PRESENTED

The issues presented in Class Counsel's Fee Motion are:

1)      Whether Settlement Class Counsel's assertion that all the prior fee awards from Round 1–4 Settlements were "incomplete" is supported by evidence on record and additional fee awards from Rounds 1–4 settlement funds may be granted?

Objectors' Answer: No


2)      Does Settlement Class Counsel's Fee Motion request fees exceeding the amounts permitted under notice provided to the class for Round 1–4 Settlements?

Objectors' Answer: Yes


3)      Whether Settlement Class Counsel's Award of Attorneys' Fees should include any interest earned from Class Members' share of the Rounds 1-4 settlement amounts even after Settlement Class Counsel's withdrawal of their fees from the settlement fund(s) years ago?

Objectors' Answer: No

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23(h)

*Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016)

*Health Republic Ins. Co. v. United States*, 58 F.4th 1365 (Fed. Cir. 2023)

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993)

*In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010)

# TABLE OF CONTENTS

Statement of Issues Presented.................................................................................iii

Controlling or Most Appropriate Authority ........................................................iv

Table of Contents.........................................................................................................v

Table of Authorities ..................................................................................................vi

Introduction ...................................................................................................................1

Argument ........................................................................................................................2

I.     Objectors are class members and intend to appear through *pro bono* counsel at the fairness hearing.....................................................................2

II.    The Court owes a fiduciary duty to unnamed class members. ..............4

III.   Class counsel is precluded from seeking additional fees for Rounds 1–4 due to judicial estoppel and waiver. ................................................5

      A.    Final fee awards for Rounds 1–4 preclude further attorneys' fee awards from those funds. ................................................................5

      B.    The existing fee awards provided ample and fair attorneys' fees............10

      C.    Class Counsel's prior conduct waives their belated new argument seeking 30% from the entire fund.............................................14

IV.   Independently, the requested fee violates notice and due process. ....................17

V.    Objectors conditionally oppose the interest requested. ........................22

Conclusion....................................................................................................................25

Certificate of Service ................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*In re Automotive Parts Antitrust Litig.*, No. 12-cv-00103,
    2016 WL 11198671 (E.D. Mich. May 11, 2016) ..................................................3

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) .................................................................................12

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ...............................................................................18

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    424 F. Supp. 3d 456 (E.D. La. 2020) ....................................................................13

*In re Citigroup Inc. Bond Litig.*,
    988 F. Supp. 2d 371 (S.D.N.Y. 2013) ............................................................. 4, 13

*In re Citigroup Inc. Secs. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ...................................................................13

*Dixie Fuel Co., LLC v. Dir., OWCP*,
    820 F.3d 833 (6th Cir. 2015) .................................................................................10

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ...................................................................................4

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ...............................................................................................10

*In re Facebook Biometric Info. Privacy Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) .............................................................. 11, 13

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2018 WL 5839691,
    2018 U.S. Dist. LEXIS 191373 (S.D.N.Y. Nov. 8, 2018) .............................. 12-13

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000) ......................................................................................4

*Graham v. Famous Daves of Am., Inc.*, 2024 WL 3454991,
    2024 U.S. Dist. LEXIS 126590 (D. Md. Jul. 18, 2024) .........................................18

*Health Republic Ins. Co. v. United States*,
    58 F.4th 1365 (Fed. Cir. 2023) ................................................................. 19

*In re Indymac Mortgage-Backed Secs. Litig.*,
    94 F. Supp. 3d 517 (S.D.N.Y. 2015) ......................................................... 13

*Jones v. Kent Cnty.*,
    115 F.4th 504 (6th Cir. 2024) .................................................................... 17

*Linneman v. Vita-Mix Corp.*,
    970 F.3d 621 (6th Cir. 2020) .................................................................... 14

*Mirando v. United States Dep't of Treasury*,
    766 F.3d 540 (6th Cir. 2014) ...................................................................... 9

*In re Mercury Interactive Corp. Secs. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ......................................................... 4, 21-22

*Musacchio v. United States*,
    577 U.S. 237 (2016) ................................................................................. 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................. 11

*In re Nat'l Prescription Opiate Litig.*,
    927 F.3d 919 (6th Cir. 2019) .................................................................... 24

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................................... 9

*New York State Teachers' Ret. Sys. v. GM Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) .......................................................... 13

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    959 F.3d 922 (2020) ............................................................................. 9-10

*Pearson v. Target Corp.*,
    968 F.3d 827 (7th Cir. 2020) ................................................................... 3-4

*Rawlings v. Prudential-Bache Properties, Inc.*,
    9 F.3d 513 (6th Cir. 1993) ................................................................... 4, 21

*Redman v. Radioshack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .................................................................... 22

*In re Royal Ahold NV Secs. & ERISA Litig.*,
    461 F. Supp. 2d 383 (D. Md. 2006) ..........................................................11

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
    825 F.3d 299 (6th Cir. 2016) .....................................................................19

*United States v. Montgomery*,
    998 F.3d 693 (6th Cir. 2020) .....................................................................17

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) .....................................................................22

*Wayside Church v. Van Buren Cty.*,
    103 F.4th 1215 (6th Cir. 2024).....................................................................5

*Whitlock v. FSL Mgmt., LLC*,
    843 F.3d 1084 (6th Cir. 2016) .....................................................................9

*Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*,
    758 F.2d 86 (3d Cir. 1985).........................................................................22

## Rules and Statutes

Fed. R. Civ. P. 23(e) ....................................................................................19

Fed. R. Civ. P. 23(e)(5)(A) ...........................................................................3

Fed. R. Civ. P. 23(h)....................................................................................21

Fed. R. Civ. P. 23(h)(1)................................................................................21

Fed. R. Civ. P. 23(h)(2)................................................................................22

Committee Notes on the 2003 Amendments to Rule 23(h)(2) .......................22

<u>**Other Authorities**</u>

Theodore Eisenberg & Geoffrey P. Miller,
    *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*,
    7 J. EMPIRICAL LEGAL STUD. 248 (2010) ........................................................ 12, 13

Federal Judicial Center,
    MANUAL FOR COMPLEX LITIGATION—FOURTH (2004) .....................................13

Brian Fitzpatrick,
    *An Empirical Study of Class Action Settlements and Their Fee Awards*,
    7 J. EMPIRICAL L. STUD. 811 (2010) .......................................................................13

Brian T. Fitzpatrick,
    THE CONSERVATIVE CASE FOR CLASS ACTIONS (2019) .......................................19

## INTRODUCTION

Overland West, Inc. and Booton, Inc. ("Objectors") oppose Class Counsel's request to increase their fee award to 30% of the entire $1.224 billion common fund. *See*, *e.g.*, No. 2:12-cv-00103, ECF 667 ("Fee Motion").[2] The Round 5 settlements added only $3.154 million to class recovery, so the vast majority of Class Counsel's request for $94.08 million seeks additional fees from Round 1–4 settlements, where prior fee awards were complete and final. Objectors oppose this $93.13 million portion of the request, which constitutes 99% of the total sought by Class Counsel.

A higher award contravenes the Court's prior final fee orders. While Class Counsel characterizes all prior fee awards as "interim and partial," they are not, were not noticed as such, were not argued by Class Counsel as such, and were not decided by the Court as such. Only the first two rounds' fee orders were partial, as those orders said explicitly. In Round 3, Class Counsel requested a 25% fee award, which the Court granted in full as totaling fees of about 22% for the first three rounds cumulatively, a figure that Judge Battani instructed Class Counsel to adhere to in Round 4. They did. Class Counsel confirmed their understanding of the cumulative and final fee award in notice to class members for both Rounds 3 and 4, which assured that counsel only reserved the right to "seek additional attorneys' fees, costs, and expenses from any

---

[2] Because relevant filings span multiple dockets, Objectors cite exemplary copies from the lowest-numbered available docket using the signal "*e.g.*" For the Court's convenience, several key documents have been attached to the accompanying Declaration of M. Frank Bednarz ("Bednarz Decl.") and cited as "Bednarz Ex." Full record cites to these are contained in the declaration.

*additional* Settlements or *recoveries obtained in the future*." Bednarz Exhs. B9 at 16; B10 at 15 (emphasis added).

The request to belatedly increase their fee to 30% of the entire fund violates the law of the case, judicial estoppel principles, and—to the extent the request constitutes a motion to reconsider 2018–20 fee orders—is years untimely. Additionally, Objectors ask the Court to confirm in any fee order that class counsel will only collect interest proportional to the new fee award issued by the Court—not interest earned from the entire $1.2 billion common fund, as the Fee Motion suggests at one point.

## ARGUMENT

I. **Objectors are class members and intend to appear through *pro bono* counsel at the fairness hearing.**

As discussed in the attached Declarations of Jeff Lucas and Cliff Booton, Objectors are corporations that provide car rental services and have collectively purchased tens of thousands of new vehicles for their operations. *See* Ex. 1 ("Lucas Decl."), ¶ 4; Ex. 2 ("Booton Decl."), ¶ 4. Overland West identifies vehicle purchases covered under the settlements which together include vehicles with components affected by every settlement part class with the sole exception of Motor Generators.[3] Ex. 1, ¶ 5. Booton, Inc. has claims in every class except Motor Generators and Inverters. Ex. 2, ¶ 5. Objectors filed claims for covered vehicles, designated as claim nos. 1002997 (Overland West) and 1001788 (Booton). Exhs. 1& 2, ¶ 6. Thus, Objectors have standing

---

[3] This part was evidently only included in a handful of hybrid model years.

to object to every round of settlement and settlements with every defendant. Defendants pleaded to have sold artificially expensive motor generators and inverters (DENSO and Hitachi) simultaneously settled claims arising from many other components sold to vehicle manufacturers, including starters, ignition coils, and air flow meters, among others. *Id.* ¶ 5; Fee Motion 58-60 (PageIDs 20910-12).

The Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF") represents the Objectors *pro bono* because they have agreed to object on behalf the entire class without settling for special consideration of their claims. CCAF's M. Frank Bednarz intends to appear at any hearing concerning the Fee Motion. Objections by CCAF clients have recovered hundreds of millions of dollars for class members by persuading courts to reduce excessive fee requests or by driving settling parties to reach improved settlements. *See* Declaration of M. Frank Bednarz ¶¶ 27-29.

Objectors bring their objection in good faith to protect the interests of the entire class under Rule 23(e)(5)(A). Exhs. 1&2, ¶¶ 9-10. Because Objectors have no intention of objecting for strictly private benefit, they have agreed to forfeit any money they might be offered to solely resolve their objections. *Id.* ¶ 11. Objectors do not resemble the self-interested objectors who appeared in early rounds of settlement, which prompted the Court to sensibly require "court approval…before an objection to a proposed settlement may be withdrawn," including from appeal. *See In re Automotive Parts Antitrust Litig.*, No. 12-cv-00103, 2016 WL 11198671 (E.D. Mich. May 11, 2016). CCAF supports this order and has successfully contested selfish objector settlements. *See Pearson v. Target*

*Corp.*, 968 F.3d 827 (7th Cir. 2020); Bednarz Decl. ¶ 33.

The Objectors join any other objection to the extent is not inconsistent.

## II.   The Court owes a fiduciary duty to unnamed class members.

A district court must act as a "fiduciary for the class," "with a jealous regard" for the rights and interests of such absent class members. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (cleaned up). The fiduciary role is necessary because "[i]n class-action settlements, the adversarial process—or … 'hard fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). "The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Unfortunately, Courts often lack adversarial presentation since "class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel." *Id.* Instead, the Court must step in as a fiduciary for the class with a "responsibility to avoid awarding plaintiffs' counsel a 'windfall' at the expense of the class—a special concern where 'the recovered fund runs into the multi-millions.'" *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 374 (S.D.N.Y. 2013) (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)).

Objectors can provide valuable assistance; "lawyers other than class counsel are well-situated—by knowledge and incentives alike—to point out to potential class members why their recovery is too low or class counsel's fees too high." *Wayside Church v. Van Buren Cty.*, 103 F.4th 1215, 1224 (6th Cir. 2024).

## III.    Class Counsel is precluded from seeking additional fees for Rounds 1–4 due to judicial estoppel and waiver.

In 2018 and 2020, the Court entered final fee orders for Rounds 3 and 4. Bednarz Exhs. B5 & B6. Those awards reflected the Court's adjudication of reasonableness—not "incomplete" placeholder amounts. These decisions constitute law of the case and now bind the Court and litigants. Abiding by those orders, Class Counsel has consistently promised to request less than 30% from the entire fund, and won fee awards based on those promises, so is estopped from changing course now to the detriment of the class. In any event, the prior fee awards were more than fair to Class Counsel, appropriately considering the economies of scale intrinsic to a billion-dollar recovery. The Court appropriately considered the arguments Class Counsel reprise in their Fee Motion.

### A.    Final fee awards for Rounds 1–4 preclude further attorneys' fee awards from those funds.

Class Counsel bases their request on the false premise that "the Court's prior fee awards to Settlement Class Counsel were interim and incomplete." Fee Mot. 28 (pageID 20880). While awards received prior to the conclusion of litigation are definitionally "interim," this does not imply they are "incomplete." The Court only granted the first

two rounds of fee requests as expressly "partial" fee awards, and fees for those settlements were finalized in the Round 3 award and its cumulative evaluation of fees.

For Round 1, the Class Counsel requested 30% of the $224 million worth of settlements achieved to that date. *E.g.* Dkt. 2:12-cv-00103, ECF 433 (Mar. 10, 2016). The morning before the Round 1 fairness hearing, on May 11, 2016, the Court requested additional briefing on fees due to its concern that the total size of recovery in the action would make a 30% fee award ultimately unreasonable. "I just think that when we add this all up it may come to a point that it is simply not reasonable." MDL ECF 1366 (Tr.) at PageID 24584. Following this hearing, the Court granted two fee awards of 10% from the settlements, for a total of 20%, each of which it called "partial" awards while taking Class Counsel's original request "under advisement." Bednarz Exhs. B2 & B3. As the Court explained at a status conference on November 16, 2016, "I have decided to do this until I make the final percentage and that is to give you 20 percent… because when I go through it I am not doing less than 20 percent." MDL ECF 1558 (Tr.) at PageID 29003. The Court held to this in Round 2, when class Counsel requested 27.5% from second-round settlements. The Court instead awarded 20% and again expressly allowed Class Counsel to seek additional fees from this request: "the Court reserves ruling on EPPs' request for additional fees from these settlements." Bednarz Ex. B4 at PageID 19298.

This changed in Round 3, and no more "incomplete" fee awards were entered by the Court. On November 7, 2018, the Court granted Class Counsel's entire 25% fee

request for Round 3 settlements. The order awarded the entire request while benchmarking Round 1–3 fee awards cumulatively as "equal to 22.06% of the proceeds of the three rounds of settlements." Bednarz Ex. B5 at PageIDs 20387, 89. Unlike prior rounds, the award was not characterized as "partial" nor did the Court permit Class Counsel to seek more fees later—and why would it have? The fee motion was granted in full, in contrast with the earlier awards.

Class Counsel may argue that the Round 3 fee order was silently "partial," but the fairness hearing on Round 3 settlements held on August 1, 2018 proves otherwise. At the hearing, Attorney Seltzer argued in favor of Class Counsel's fee request, which precipitated a discussion about the earlier partial awards for Rounds 1–2:

> MR. SELTZER: But the 20 percent awards, the Court expressly made those interim. In other words, the Court reserved judgment on whether --
>
> THE COURT: Correct.
>
> MR. SELTZER: -- to award more money out of those settlements at the end of the cases. So, we are asking for the 25 percent out of this round because we are getting close to the end of the case, we are not there yet, but that was the reason for doing that at this time. I mean, we could do the -- if the Court were inclined, the Court could follow what was done previously and award 20 percent on an interim basis, but we think the 25 percent is fully justified on the facts of the cases as they now sit.

Bednarz Ex. B1 (Tr.) at PageID 36066. Notably, Mr. Seltzer contrasted the 25% requested with an "interim basis" award—that is, the request was not meant to be incomplete, but the *entire* amount for Round 3 settlements.

The Court responded with different and more holistic proposal, one that Class

Counsel accepted: finalizing fee awards for the first three rounds.

> THE COURT: Well, I will always have difficulty with the attorney
> fees, not to underestimate them and not to overestimate particularly
> with the end payors because I see – I'm anticipating a large number
> of claimants at the end, so we want the pot to be as large as can be.
>
> But in listening to you now and in applying the factors and looking
> at round one and round two at 20 percent, I think the average --
> and I recalculated this, and I think you had it in your papers, it was
> like -- it would come to like 22 percent.
>
> MR. SELTZER: Yes, Your Honor. If this application were granted,
> then if you combine all of the prior awards and use that as a
> percentage of the settlements achieved to date, including round
> three, it would be about 22 percent.

*Id.* at PageID 36067-68. The Court then announced that it would award "that exact

amount," meaning the entire 25% request. The Court considered that the exact

percentage of a fee was discretionary and not "magic," but "certainly when we get to

figures of over a billion dollars, we know that there's a substantial attorney fee that's

going to be involved there regardless of the percentage." *Id.* at PageID 36069. After

discussing why the cumulative 22% fee award would be reasonable based on percentage

and at least a rough crosscheck of lodestar (*id.*), the transcript confirms that Judge

Battani intended the award to resolve all prior fee requests.

For Round 3 and beyond, the Court expected finality:

> I think what's fair is probably somewhere between the 20 and 25
> percent, and I think you struck it when you said 22 and I did that,
> and I think that that's probably a fair resolution in a case with over
> a billion dollar recovery.
>
> So I'm going to grant the 25 percent, which would equal roughly
> 22 – it's 22 point-something, and I want you to stick with that for

> your round four. I'm telling you that now. I think that that would
> be a fair resolution for an adequate and well deserved attorney fee.
>
> MR. SELTZER: Very well, Your Honor.

*Id.* at PageID 36070.

Class Counsel did not move to amend the fee order to reserve their supposed right to seek almost $100 million seven years later. Instead, they abided by it, telling the class and Court that they would seek the same 22% in Round 4. On September 23, 2020, the Court awarded a 22% fee for Round 4, consistent with its prior statements that it expected that percentage going forward. Bednarz Ex. B6. As with Round 3, the Court entered the Round 4 fee order without any suggestion it was "partial" or that additional fees were taken "under advisement" or could be augmented later.

Because Class Counsel persuaded the court to grant their entire Rounds 3 & 4 fee awards, accepting their justification with reference to the 22% cumulative rate for all settlements, they are judicially estopped from later arguing these awards were "incomplete." *See New Hampshire v. Maine*, 532 U.S. 742, 750-52 (2001); *Mirando v. United States Dep't of Treasury*, 766 F.3d 540, 545-48 (6th Cir. 2014) (applying three-factor test for judicial estoppel). Estoppel principles, if anything, apply more stringently to the parties in class litigation because "the court-approval mechanism[s] contained in Rule 23[] are designed to protect absent class members and other non-parties to the litigation," not the named parties. *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1094-95 (6th Cir. 2016) (refusing to allow defendant to renege on class settlement agreement after favorable change in the underlying law). For example, in *In re Optical Disk Drive*

*Prods. Antitrust Litig.*, the Ninth Circuit sustained an objector's challenge to a fee award that failed to take into account class counsel's previous fee bid, made to secure appointment, in front of a predecessor judge in the MDL litigation. 959 F.3d 922, 930-35 (2020). Allowing counsel to escape their earlier representations comes "at the expense of future settlements, inasmuch as [courts] will be unable to trust assurances made by plaintiffs' counsel." *Evans v. Jeff D.*, 475 U.S. 717, 737 n.29 (1986).

Class Counsel assert that they can seek additional money from the Rounds 1–4 settlements in their notice for Round 5, but belated gamesmanship does not alter the finality of the earlier fee orders. While district court decisions do not bind an appellate court, prior rulings by a district court are presumed to govern later district court proceedings in same case. *Musacchio v. United States*, 577 U.S. 237, 245 (2016) ("courts generally to refuse to reopen what has been decided"). "[F]indings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Dixie Fuel Co., LLC v. Dir., OWCP*, 820 F.3d 833, 843 (6th Cir. 2015).

## B.   The existing fee awards provided ample and fair attorneys' fees.

The latest fee motion repeats prior arguments about scale and difficulty that the Court already considered in setting Rounds 1–4 at an aggregate ~22%. Objectors believe the question properly before this Court is narrow—fees for the final Round 5 tranche of recovery—so the Court need not revisit these arguments. In fact, the lack of changed law or circumstances would make revisiting Rounds 1–4 awards erroneous. If the Court treats the request as a motion to reconsider, the motion is untimely by years.

Class counsel cites no authority or exceptional circumstances for revisiting these orders. That said, the Court can also rest assured that the prior fee awards were generous and issued with consideration of the underlying complexity, risk, and quality of work. Class counsel has been awarded $269.17 million dollars to date.

A fee award of 22% on $1.2 billion is significantly higher than most courts award for this level of recovery. This is because reasonable attorneys' fees, like those granted in Rounds 1–4, account for economies of scale to prevent a windfall for plaintiffs' attorneys at the expense of the class. Very large recoveries tend to earn smaller percentages. This follows from the observation that "[i]t is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case." *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 486 (S.D.N.Y. 1998).

Thus, high-dollar recoveries are the result of class size and claim strength—not attorney skill alone—so "the percentage awarded ordinarily should decrease as the amount of the recovery rises, particularly in 'mega-fund' cases where the recovery is above $100 million." *In re Royal Ahold NV Secs. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006) (reducing fee request to 12% of $163 million fund). "A 25% presumption" for attorneys' fees—let alone 30%—"is too big to be applied to common funds as large as this one" for that would "be the equivalent of a Willy Wonka golden ticket." *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 631 (N.D. Cal. 2021) (awarding 15% of $650 million fund). "The existence of a scaling effect—the fee percent decreases as class recovery increases—is central to justifying aggregate litigation

such as class actions. Plaintiffs' ability to aggregate into classes that reduce the percentage of recovery devoted to fees should be a hallmark of a well-functioning class action system." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 263 (2010).

If the prior fee orders were not final, Objectors could soundly argue that 22% was already excessive.[4] Courts in this Circuit and others typically reject fee requests above 25% sought by class counsel in "mega-fund" cases involving recovery of over $100 million. In *Bowling v. Pfizer*, for example, the Sixth Circuit affirmed an award of 10% of a $102.5 million common fund where the district court recognized "the economics of scale involved in a class action of this size suggested that an award of 20% of the fund, *i.e.*, $33 million, would be excessive." 102 F.3d 777, 780 (6th Cir. 1996) (class counsel represented it as a $165 million fund). When deciding a 16.51% request from a $2.4 billion antitrust settlement fund, the Southern District of New York observed "that the 22.3% figure [cited by movants from a recent study] comprises *all* cases with recoveries above $67.5 million, it does not necessarily reflect a reasonable baseline fee for this case…importantly for this case, Professor Miller cites to a study of 'mega settlements' exceeding $1 billion, which found a mean fee percentage of 13.7% and a median of 9.5% with a standard deviation of 11%." *In re Foreign Exch. Benchmark*

---

[4] Whether the Court awards 22% or 30% from Round 5 amounts to about a $250,000 difference pre-interest, or about a 0.02% difference to the overall fee award, and for this reason Objectors do not take a position on it.

*Rates Antitrust Litig.*, 2018 WL 5839691, 2018 U.S. Dist. LEXIS 191373, at *18 (S.D.N.Y. Nov. 8, 2018) (awarding 13% of fund).[5] Empirical surveys confirm that awards *below* 20% are typical for recoveries approaching or exceeding $1 billion.[6]

Class Counsel makes much of the fact that the Court rejected a robotic declining percentage approach to fee awards, but they do not recount the process by which it arrived at 22%. In the first two rounds, the Court *rejected* fee requests of 30% and 27.5% precisely for concern that percentages this large would be excessive in view of the total recovery. MDL ECF 1366 (Tr.) at PageID 24583-84 (fee percentages "have to come

---

[5] *See also New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226, 244 (E.D. Mich. 2016) (awarding fees of 7% of $300M); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 499-500 (E.D. La. 2020) (awarding 19% instead of requested 30% from $248M); *In re Indymac Mortgage-Backed Secs. Litig.*, 94 F. Supp. 3d 517 (S.D.N.Y. 2015) (awarding 8.2% instead of requested 13% from $346M); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (awarding 12% instead of requested 16.5% from $590M); *Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d at 373 (awarding 16% instead of requested 20% of $730M).

[6] The data show that in class actions "fee percentages tended to drift lower at a fairly slow pace until a settlement size of $100 million was reached, at which point the fee percentages plunged well below 20 percent." Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010). In class actions in which the settlement exceeded $1 billion, the median fee award was 9.5% and the mean was 13.7%. *Id.* at 839. Other surveys support this. *E.g.,* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 265 tbl.7 (2010) (mean award of 12% and median award of 10.2% for settlement recoveries greater than $175.5 million); *Facebook Biometric*, 522 F. Supp. 3d at 632 (observing that in Professor William Rubenstein's dataset of cases ranging from $400 to $800 million, the mean award was 16% and the median award was 15.5%); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION— FOURTH 188-89 (2004) (noting survey where "class actions with recoveries exceeding $100 million found fee percentages ranging from 4.1% to 17.92%").

down – or may come down" for larger recoveries). While the Court did not use a rigid formula to reach this number, it *did* properly consider the percentage given the size of the fund involved: that 22% was a "fair resolution in a case with over a billion dollar recovery." Bednarz Ex. B1 (Tr.) at PageID. 36070. Class counsel makes no argument that this reasoned decision should be overturned; they don't even acknowledge it. *Cf. Linneman v. Vita-mix Corp.,* 970 F.3d 621, 627 (6th Cir. 2020) (expressing concern with class lawyers "gam[ing] the system" to secure excess fees).

### C.    Class Counsel's prior conduct waives their belated new argument seeking 30% from the entire fund.

Class Counsel did not contest the Round 3 fee award, but instead assented to it. Class Counsel filed for Round 4 fees on October 31, 2019 and requested 22%, exactly according to this Court's prior instructions. In that motion, Class Counsel quoted some of the remarks above from the Round 3 fairness hearing. *E.g.* Dkt. 2:12-cv-00403, ECF 297 at PageID 10567-68.

The Round 4 fee motion was filed while Judge Battani was still assigned to the case, but at the fairness hearing on September 17, 2020, Class Counsel consistently explained the reason for their 22% request:

> The amount that we apply for represents 22.05 percent of the total settlement fund amount of all the settlements collectively together. And it's precisely what Judge Battani instructed us to ask for at the fairness hearing on August 1st, 2018, wherein -- wherein she stated on the record, "So I'm going to grant the 25 percent," which was for the third round, your Honor, "which would equal roughly 22. It's 22-point something. And I want you to stick with that for your

> round four. I'm telling you now, that would be a fair resolution for
> an adequate and well-deserved attorney fee."

MDL ECF 2273 (Tr.) at PageID 40397-98.

Class Counsel stated "you are not bound by Judge Battani, but we felt that it was appropriate and our duty and responsibility to follow the instructions of the presiding judge at the time we filed our motion for attorney's fees." *Id.* At no point in the hearing did Class Counsel assert the Judge Battani's "resolution" was in fact an incomplete fee award. Nor did any filing suggest Class Counsel might return to seek more fees based on Round 4 recovery.[7]

In fact, Class Counsel represented that they planned to seek *less* than 30% way back in June 2016—*nine years ago*. Netflix still mailed DVDs, TikTok didn't exist, and Class Counsel reported that they would not be so unreasonable as to request 30% of a billion-dollar common fund. Their brief, filed in response to the hearing on May 11, 2016 where Judge Battani expressed concern about the ultimate size of attorneys' fees, reaffirmed that Class Counsel requested 30%—but only from "the net settlement funds created by the settlements with eleven defendants which were recently granted final approval," that is, the Round 1 settlements. *E.g.* No. 2:12-cv-0103, ECF 491 (Jun. 14, 2016) at PageID 16814. They assured the Court (and class members) that "depending

---

[7] The only reservation for a potential future fee award in the Round 4 fee motion is for "work performed in connection with the settlement claims administration process." *E.g.* Dkt. 2:12-cv-00403, ECF 297at PageID 10580 n.10. The new Fee Motion is not premised on this work. Should Class Counsel attempt to change their request to this basis instead, Objectors reserve the right to supplement their objection.

upon the size of additional recoveries that may be obtained in the future, the stage of the litigation when such recoveries are obtained, and the total attorneys' fee lodestar incurred at the time when subsequent fee applications are made—EPPs plan to seek lower percentages of those recoveries." *Id.* Class Counsel previewed their first three fee requests in this filing, without suggesting that they might later return to ask for more:

> For example, the EPPs now seek 30% of net settlement funds totaling approximately $217 million. The next fee application would seek no more than 27.5% of the approximately $350 million in settlements for which written settlement agreements have been or are currently being finalized. Depending upon the resulting lodestar/multiplier and stage of the litigation, future fee applications by the EPPs would seek no more than 25% of the net settlement funds.

*Id.* at PageID 16820.

Class Counsel repeated this commitment at the August 1, 2018 fairness hearing for Round 3, where the Court decided an overall 22.06% fee award to be fair. Class Counsel kicked off the discussion on fees remarking: "And as we previously said we would do, we have applied in each round for progressively lower percentages; the round two percentage was 27 and a half percent as Your Honor may recall, and then the round one was a bit higher than that." Bednarz Ex. B1 at 27 (PageID 36061). This promise sensibly comports with typical fee award practices in class megafunds, where marginally lower percentages tend to be awarded as the size of the fund increases.

Seven years after this hearing, and four years after Judge Battani retired, Class Counsel broke from their prior representations without explanation. Class Counsel

belatedly asks for a *larger* fee award at the very end, years after the last settlement. They do not bother to mention, let alone argue against, their own prior commitments.

Similar to judicial estoppel, the waiver doctrine protects litigants from unfair surprise, promotes the finality of judgments, and conserves judicial resources. "Waiver is the intentional relinquishment or abandonment of a known right." *United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2020) (internal quotation omitted). Waiver ought not be confused with its less severe cousin, forfeiture, under which a litigant omits the assertion of an argument or a right. Forfeitures may be excused for "exceptional circumstances" *Jones v. Kent Cnty.*, 115 F.4th 504, 512-13 (6th Cir. 2024) (internal quotation omitted). Waivers may not be excused at all. *Id.*.

Granting the Fee Motion would take nearly $100 million (likely more, including interest) from the pockets of class members. For this reason, Objectors find baseless the suggestion by "218 Large Claim Objectors'" to alternatively award *any* additional funds from prior rounds. *E.g.* 12-cv-00103, ECF 676 at PageID 21189. To protect class members and the integrity of the judicial process, law-of-the-case, judicial estoppel, and waiver each preclude class counsel from so radically altering their position.

## IV.     Independently, the requested fee violates notice and due process.

Even if the Court finds itself unbound by Judge Battani's decision and even if Class Counsel were not estopped from belatedly changing course, prior notices sent to class members preclude most of the fees sought by Class Counsel.

Until Round 5, every notice to class members reserved class counsel's right to

seek additional fees only on new settlements obtained "in the future." Also, every round

except for Round 1 included a lower limit on fees from each respective tranche of

settlements than Class Counsel now seeks. The terms from Rounds 1–4 notices

(attached as Bednarz Exhs. B7-B10) are collected below:

| Term | Round 1 | Round 2 | Round 3 | Round 4 |
|---|---|---|---|---|
| **Fee %** | "not to exceed one-third of the … ~$225 million in Settlement Funds" | "not to exceed 27.5% of … additional [$379M] Settlement Funds" | "not to exceed 25% of … additional [$433M] Settlement Funds" | "not to exceed 22% of … additional [$184M] Settlement Funds" |
| **Future Fees** | *All four notices have this nearly-verbatim disclosure:*<br>"Class Counsel may seek additional attorneys' fees, costs, and expenses from any [other/additional] Settlements or recoveries obtained in the future." | | | |

These notices appear to have been drafted by Class Counsel, and were approved

by the Court between September 24, 2015 and August 2, 2019. None provided any

indication that Class Counsel would later seek a retroactive 30% fee from settlements

that had already been approved, had fee awards granted, and indeed, have already been

distributed in part. The Round 3–4 fee awards simply do not permit further award from

those tranches because they were granted in full. "Class Counsel wants more from the

settlement amount, contending that it has done more work. … There is no room,

however, for the court to approve any more in attorneys' fees. The approval of the class

and collective action settlement was premised on the maximum attorneys' fee award

that has already been granted." *Graham v. Famous Daves of Am., Inc.,* 2024 WL 3454991,

2024 U.S. Dist. LEXIS 126590, *5 (D. Md. Jul. 18, 2024).

Alas, "the profit motive will give class action lawyers incentives to do sneaky

18

things, just like it gives businesses incentives to do sneaky things." *Briseño v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) (quoting Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS 72 (2019)). Following the retirement of Judge Battani, Class Counsel moved for approval of Round 5 notice, which the Fee Motion treats as if it overrides all prior notices given to the class. It does not.

Court-approved notice disseminated to the class is binding on Class Counsel because class members must make decisions about whether to opt-out or object based on notice. "Class members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e)" unless they are given accurate notice. *Shane Grp. v. Blue Cross Blue Shield*, 825 F.3d 299, 309 (6th Cir. 2016). Opt-out deadlines for Round 1–4 expired years before Class Counsel decided they might seek nearly $100 million more from the common fund in 2022. The ability of absent class members to file their own suits is far from hypothetical in a case like this where damages are concentrated among a handful of purchasers much larger than the Objectors—larger claimants have likely purchased *millions* of covered vehicles, and such class members would have had the means to opt-out and pursue their own actions had they known Class Counsel would later regard these notices as non-binding. The ability of class members to file their suit was extinguished years ago based on the representations that Class Counsel chose to make in the Court-approved forms of notice.

Class Counsel ask this Court to commit reversible error by awarding more than permitted under Round 1–4 notices. For example, in *Health Republic Ins. Co. v. United*

*States*, the class received notice suggesting that fees would be set with reference to a lodestar crosscheck, which the approving court failed to do. 58 F.4th 1365, 1373 (Fed. Cir. 2023). The *Health Republic* panel court agreed with class counsel that crosscheck is not be normally required, but vacated the fee order because "developments in the litigation subsequent to the notice and the choices to join the class did not make the process of a cross-check no longer material." *Id.* at 1373-74. Notice is a "deal" offered to potential class claimants so they can decide whether to remain in the class, and "[a]ssurances about the future course of the litigation, when stated in a court-approved class notice like the ones here, must generally be respected." *Id.* at 1373.

Class Counsel does not explain what exceptional reasons could justify altering the deal presented to class members over the last decade. As with many of these issues, they fail to address it because they do not inform the Court of the prior contrary notices.

Class Counsel may change their position yet again and argue that the Court can at least award up to 30% of Round 1 and 27.5% of Round 2, which gets them roughly halfway to their requested fee, but Objectors believe this improper due to the law-of-the-case and estoppel as explained in Section III. Even if the Court does not accept these arguments, Class Counsel's failure to disclose prior notices and proceedings before the late Judge Battani militate against rewarding their selective candor. Objectors reserve their right to respond to any substantially altered fee motion.

Class Counsel may argue that objections based on Round 1–4 notice are untimely because class members could have hypothetically objected to final approval of the

Round 5 settlements. This argument would be preposterous for several reasons. In the first place, objection to a hypothetical fee award does not ripen until such award is actually requested. Had the Objectors—or anyone else—objected to notice terms in 2022, the Court would have overruled them as premature and speculative.[8] Second, the Round 5 notice does not plainly announce its enormous departure from all prior notices, nor did Class Counsel bring it to the Court's attention. To even realize the problem, a class member would have to dig deep into section 22 on page 11 of detailed notice for the Round 5 settlements. Bednarz Ex. B11 at 11. This notice concerned settlements 50 times smaller than the next smallest tranche of settlements, so class members like the Objectors had no reason to suspect a belated departure from all prior notices and fee requests. Again, the lack of objections to Round 5 is unremarkable "since it is to be expected that class members with small individual stakes in the outcome will not file objections." *Rawlings*, 9 F.3d at 516.

---

[8] Class Counsel may argue Round 5 notice implies that fee objections must have been received by December 20, 2022—over two years before they filed their Fee Motion. *Id.* at 2. But any purported requirement like this violates Rule 23(h)(1), which requires reasonable notice to class members and Rule 23(h)(2), which gives class members an absolute right to object to fee motions from their recovery. Class members cannot be stripped of their rights even when the deadline purports to be weeks—not years—prior to the fee motion, even if the Court had expressly imposed such a limit, which it did not. "When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class." *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993-95 (9th Cir. 2010); *Redman v. Radioshack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014); *see also* Committee Notes on the 2003 Amendments to Rule 23(h)(2) ("the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion.").

Class Counsel may argue that Round 5 notice required any objections to fees to have been filed in 2022, but such argument straightforwardly violates Rule 23(h). To the extent Round 5 notice can be construed as setting such a deadline, it provides further reason to disregard its divergent terms that prejudice the class.

Granting the Fee Motion as requested would violate due process and Rule 23's notice and adequacy requirements. *See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (incomplete notice of released claims violates Due Process). "[T]he bounds of a class counsel's fiduciary duty with respect to notice are determined in large part by due process and Rule 23 requirements." *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 91 (3d Cir. 1985).

## V.     Objectors conditionally oppose the interest requested.

The Court should not award class counsel any fees that include interest earned from class members' share of the Rounds 1–4 settlement amounts. Objectors conditionally objects to such an award, *if* this is what Class Counsel propose *and if* the Court grants additional fees for Rounds 1–4.

The Fee Motion does not make the interest request clear, and the Court should clarify the terms if it grants such an award. If Class Counsel propose only a proportional share of interest earned from newly-awarded *attorneys' fees*, the Court may do so. Such interest merely reflects money earned on fee awards to counsel, which could be constructively considered as having rightly belonged to counsel since the funds were deposited. For example, interest on the Round 5 settlements has earned interest in the

last few years and fees have not been paid from it. If the Court awards 30% from the Round 5 settlements, it must award 30% of the present fund value *including* the interest. To do otherwise would shortchange attorneys. Class Counsel's Statement of Issue describes what should occur: any new fee award from earlier rounds should include "a pro rata share of the interest earned on the amount of any award granted through this application." Fee Motion at PageID 20851.

However, another part of the Fee Motion, footnote 12, suggests counsel seeks a *pro rata* share of interest from the whole common fund—not just newly-awarded fees. "Settlement Class Counsel also request a pro rata share of the interest earned on the Aggregate Settlement Amount." Fee Motion at PageID 20857 n.12. While Class Counsel may have intended to describe the same procedure suggested by their Statement of Issue, the reference to the "Aggregate Settlement Amount" makes it sound as if they seek 30% of the interest accrued on the entire net common fund as the underlying settlements describe the term. That would be inappropriate because the bulk of the interest belongs to the class. If that occurs, Class Counsel would benefit from the time value of money that rightfully belongs to the class claimants still awaiting their full distribution. Such award would unfairly diminish Class Members' recovery and effectively award a higher percentage to Class Counsel. *See* Bednarz Decl. ¶¶ 16-22.

The Fee Motion does not say how much interest has accrued, so Objectors cannot tell exactly what Class Counsel propose. Objectors reserve their right to

supplement their objection if Class Counsel clarify that they do indeed to seek an objectionable share of interest, as a co-lead class firm has in another case.[9]

To be clear, the Court need not delve into the issue if it agrees with Objectors that attorneys' fees for Rounds 1–4 are final. If so, interest on earlier funds does not matter; all those funds properly remain with the class with no interest due. The *pro rata* share of interest for Round 5 should be identical to the fee percentage. But if the Court increases any earlier awards, it should resolve the ambiguity because the difference likely amounts to tens of millions of dollars. *See* Bednarz Decl. ¶¶ 19-21.

The Court should request disclosure of the interest earned for class benefit in any event. A recently-filed putative class action alleges several settlement administrators conspired with two banks, including the one used in this case, which were allegedly fixing prices so that claims administrator could receive kickbacks or bonuses for settlement deposits which return below-market rates. *Id.* ¶ 19. While the undersigned does not know the accuracy of the pleadings filed by Boies Schiller Flexner LLP, a reputable law firm, the class claimants' and public's interest in transparent court proceedings cannot be sacrificed at the altar of efficiency. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 933 (6th Cir. 2019).

---

[9] Counsel for commercial indirect purchaser plaintiffs in *In re Broiler Chicken Antitrust Litigation*, which includes Cotchett, Pitre & McCarthy LLP, successfully moved for interest on the entire settlement fund as supposedly authorized from an interim fee award they had already received. No. 1:16-cv-8637, ECF 7100 (N.D. Ill. Dec. 29, 2023) at 7. The district court did not notice the issue. No objectors appeared in that track.

Disclosure of actual interest earned would best serve the class.

## CONCLUSION

The Court should reject any attempt to impose a 30% fee on the entirety of the Rounds 1–5 settlements. Only Round 5 lacks a fee award; only that portion should be granted now. Objectors take no position on the Round 5 fee request for 30% of the $3.154 million in settlement funds secured since 2020, nor to the reimbursement of expenses, but fee awards for Rounds 1–4 are final for those funds. Class Counsel are already richly compensated, and no extraordinary basis justifies reopening settled and final awards. Independently, the requested fee violates prior class notices, misleads class members, and violates their due process rights.

If the Court nevertheless awards additional fees from any earlier round of settlements, it should ensure that interest is properly confined to only the interest attributable to new fee awards. Interest should also be reported to ensure that class funds were not held in accounts substantially below market rates.

Dated: June 6, 2025        */s/ M. Frank Bednarz*
                            M. Frank Bednarz (IL ARDC No. 6299073)
                            HAMILTON LINCOLN LAW INSTITUTE
                            CENTER FOR CLASS ACTION FAIRNESS
                            1440 W. Taylor St # 1487
                            Chicago, IL 60607
                            Phone: 801-706-2690
                            Email: frank.bednarz@hlli.org

                            *Attorney for Objectors Overland West, Inc. and Booton, Inc.*

## INDEX OF EXHIBITS

| Exhibit | | Description |
|---|---|---|
| 1 | | Declaration of Jeff Lucas in Support of Overland West, Inc.'s Objection to Class Counsel's Motion for an Award of Attorneys' Fees |
| 2 | | Declaration of Cliff Booton in Support of Booton, Inc.'s Objection to Class Counsel's Motion for an Award of Attorneys' Fees |
| 3 | | Declaration of M. Frank Bednarz in Support of Overland West, Inc.'s and Booton, Inc.'s Objection to Class Counsel's Motion for an Award of Attorneys' Fees |
| | B1 | Transcript of Fairness Hearing (Round 3, Aug. 1, 2018) – *In re: Automotive Parts Antitrust Litigation*, No. 2:12-md-02311, ECF 1937 |
| | B2 | Round 1 Partial Grant of Attorneys' Fees – *In re: Wire Harness Systems*, No: 2:12-cv-0103, ECF 498 (Jun. 20, 2016) |
| | B3 | Round 1 Supplemental Grant of Attorneys' Fees – *In re: Wire Harness Systems*, No: 2:12-cv-0103, ECF 545 (Dec. 5, 2016) |
| | B4 | Round 2 Fee Order – *In re: Wire Harness Systems*, No: 2:12-cv-0103, ECF 578 (Jul. 10, 2017) |
| | B5 | Round 3 Fee Order – *In re: Wire Harness Systems*, No: 2:12-cv-0103, ECF 626 (Nov. 7, 2018) |
| | B6 | Round 4 Fee Order – *In re: Heater Control Panels*, No: 2:12-cv-0403, ECF 320 (Sep. 23, 2020) |
| | B7 | Round 1 "Updated"/"Combined" Notice (Jan. 12, 2016) |
| | B8 | Round 2 Notice (Sep. 14, 2016) |
| | B9 | Round 3 Notice (Feb. 23, 2018) |
| | B10 | Round 4 Notice (Jul. 20, 2019) |
| | B11 | Round 5 Notice (Aug. 8, 2022) |

Dated: 6/4/25

*Jeff Lucas*
Jeff Lucas (Jun 4, 2025 11:56 MDT)

Jeff P. Lucas
On behalf of Objector Overland West, Inc.[10]

Dated: 6/2/25

Cliff Booton (Jun 2, 2025 13:25 MDT)

Cliff Booton
On behalf of Booton, Inc.

---

[10] Notice regarding the Fee Motion says that objections must be signed. *See* Notice attached to Overland West's *Ex Ante* Motion for Extension of Time for Class Claimants to Respond, *e.g.* 2:12-cv-00103 ECF 672, at PageID 21152. In addition to signing the declarations filed with their Objection, representatives for the Objectors reviewed and signed the substantially-final version of this Objection as indicated.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Additionally, I caused a substantially similar copy of the foregoing motion and all attached exhibits to be shipped by United States Postal Service Priority Mail Express so that it would be delivered "guaranteed" by this date to:

Auto Parts Settlements Objections
P.O. Box 10163
Dublin, OH 43017-3163

/s/ M. Frank Bednarz
M. Frank Bednarz